# AMERICAN ARBITRATION ASSOCIATION

| | | |
|---|---|---|
| CARL POOLE, individually, and on behalf of all similarly-situated persons, | ) ) ) | |
| Claimant, | ) ) | |
| v. | ) ) | Case No. 01-19-0000-4151 |
| GREENWAY HOME SERVICES, LLC, GREENWAY HOME SERVICES OF NASHVILLE, LLC, and WHIT GREENWAY and DEVIN WILLIAMS, individually, | ) ) ) ) ) ) | Arbitrator Michael L. Russell |
| Respondents. | ) | |

## CLAIMANT'S UNOPPOSED MOTION FOR SETTLEMENT APPROVAL OF FLSA §216(b) COLLECTIVE ACTION CLAIMS AND SUPPORTING MEMORANDUM

Claimant Carl Poole ("Claimant," "Named Claimant," or "Poole") submits the following Unopposed Motion for Settlement Approval of FLSA § 216(b) Collective Action Claims and Supporting Memorandum. For the reasons set forth herein, the proposed settlement is fair, adequate and reasonable, and therefore, the Arbitrator should approve it.

## INTRODUCTION

On September 26, 2018, Claimant, on behalf of himself and all others similarly-situated, filed a Complaint in the United District Court for the Middle District of Tennessee, case no. 3:18-cv-00967, against Respondents, for violations of the minimum wage and overtime provisions of the Fair Labor Standards Act ("FLSA"). Soon thereafter, counsel for Respondents advised that unless Claimant otherwise agreed, Respondents intended to file a motion to compel arbitration due to an arbitration provision in Claimant's employment agreement. After reaching an agreement, the parties filed a Joint Motion for Order of Reference to Arbitration, wherein the parties agreed that the dispute "should be referred to binding arbitration with the American Arbitration

Association (the "AAA") and conducted pursuant to the AAA's applicable Rules, including but not limited to its Rules regarding the arbitrator selection process." As a result, the court entered an Order referring Claimant's Complaint "to binding arbitration with the American Arbitration Association (the "AAA") to be conducted pursuant to the AAA's applicable Rules, including but not limited to its Rules regarding the arbitrator selection process."

On January 29, 2019, Claimant filed a Demand for Arbitration with the AAA, and attached a copy of his original court Complaint which alleged a cause of action pursuant to the collective action provisions of the FLSA found at §216(b). Because the parties agreed that arbitration would be conducted pursuant to all applicable AAA Rules, and because the AAA Supplementary Rules of Class Arbitrations ("AAA Class Rules") only provide an opt-out procedure for class claims, Claimant filed an Amended Demand for Class Arbitration wherein Claimant demanded class arbitration on behalf of himself and all similarly situated current and former non-exempt Service Technicians and/or Installers who worked for Respondents within the three year period prior to September 26, 2018 (the date Claimant filed his original Complaint in the United District Court for the Middle District of Tennessee), through the present (the "Class Members"), pursuant to the opt-out provision of the AAA Class Rules. *See* Am. Demand, ¶¶ 2, 63-76. In the alternative, Claimant sought claims on behalf of himself and all Class Members pursuant to the collective action provision of the FLSA found at §216(b). *See id*. at ¶¶ 3, 77-84.

Thereafter, Respondents filed a Motion to Strike Amended Demand for Class Arbitration which the Arbitrator granted on July 7, 2019. As a result, the case proceeded solely as an FLSA collective action.

Claimant now moves, without opposition, for approval of a $640,000 settlement that resolves all claims in this litigation (the "Settlement Agreement").[1]

After two (2) years of contentious litigation, this settlement provides relief to Claimant and the Class Members who joined the action after the Arbitrator conditionally certified Claimant's claim under the FLSA on January 28, 2020. This Settlement Agreement is the result of direct negotiations between the parties that took place during mediation on August 3, 2020, and continuing negotiations with the mediator in November and December 2020, and provides an excellent result for the Claimant and Class Members in light of the current posture of the case.

## FACTUAL AND PROCEDURAL HISTORY

After the case proceeded solely as an FLSA collective action, Claimant filed a consent form signed by William Snyder. Thereafter, Claimant filed a Motion for Conditional Certification, which the Arbitrator granted on January 28, 2020, as to all Technicians and Installers who worked out of Respondent's Nashville and Memphis locations from three years prior to December 13, 2019, which is the date of Claimant's Motion for Conditional Certification, up to June 30, 2020. Following the distribution of Section 216(b) Notice, forty-five (45) additional individuals joined this action, for a total of forty-seven (47) Claimants.

On August 3, 2020, the parties conducted an arm's-length mediation with Bob Boston of Waller. The mediation concluded without a resolution. However, the parties continued negotiations through the mediator in November and December 2020, and ultimately agreed to a settlement of $640,000 on December 14, 2020.

---

[1] The Settlement Agreement is attached as **Exhibit 1** to the Claimant's Unopposed Motion for Settlement Approval of FLSA §216(b) Collective Action Claims.

## SETTLEMENT TERMS

The Settlement Agreement resolves fully, finally, and with prejudice, all monetary compensation claims that Claimant and Class Members have against Respondents. Under the terms of the Settlement Agreement, Respondents agree to pay a total of $640,000 to be allocated by Claimant's counsel and subject to the Arbitrator's approval. The $640,000 shall be allocated as follows:

- $378,455[2] to the Claimant and Opt-in Claimants, including a service award totaling $10,000 to Claimant Poole, to be distributed as follows:

  - Within five (5) calendar days of the Arbitrator approving this Settlement Agreement, but no later than December 30, 2020, Respondents shall issue and deliver to Class Counsel each Class Member's Settlement Award Check(s), minus any employee side federal or state payroll taxes for the W-2 portion of the settlement awards for each Class Member who responded to Class Counsel's communications regarding this settlement and who confirmed their current mailing address.[3] Class Counsel shall distribute all Settlement Awards to Class Members within five (5) business days of receiving the Settlement Award Checks. Any Settlement Award Checks returned to Class Counsel with a forwarding address shall be re-mailed within five (5) business days following receipt of the returned mail. If any Settlement Award Check is returned without a forwarding address, Class Counsel shall undertake reasonable efforts such as skip traces to search for the correct address within five (5) business days, and shall re-mail the Settlement Award Check to any newly found addresses within five (5) business days of finding the new address(es);

  - Within five (5) calendar days of the Arbitrator approving this Settlement Agreement, Respondents shall wire to Class Counsel the entire lump sum owed to any Class Member who has not responded to Class Counsel and/or that Class Counsel is unable to locate before the Arbitrator approves this Settlement

---

[2] A Schedule of the proposed allocations to each class member is attached hereto as **Exhibit 2**.

[3] For all Class Members who have responded to Class Counsel, fifty percent (50%) of each Settlement Award to such Class Members shall be treated as back wages, and accordingly, on each Settlement Award, Respondents shall withhold federal and applicable state income (if any) and employment taxes and withholdings as required by law. Withholding shall be based on the W-4 each Class Member completes. The remaining 50% of each Settlement Award shall be treated as non-wage penalties and liquidated damages, to be reported on an IRS Form 1099, and shall not be subject to federal or state withholdings.

Agreement.[4] Within ten (10) calendar days of receiving the lump sum owed to any Class Member who has not responded to Class Counsel and/or that Class Counsel is unable to locate before the Arbitrator approves this Settlement Agreement, Class Counsel shall undertake reasonable efforts to locate such Class Members so they can claim his/her share of the Settlement Award. Any funds unclaimed after one-hundred and eighty (180) days of being received by Class Counsel will be distributed as a *cy pres* to the Legal Aid Society of Middle Tennessee & The Cumberlands.

- $249,449.50 to Claimant's counsel, Dickinson Wright, for their reasonable attorney's fees and expenses to be wired within five (5) calendar days of the Arbitrator approving this Settlement Agreement, but no later than December 30, 2020.

- $12,095.70 to Claimant's counsel, Trevor Howell, for his reasonable attorney's fees and expenses to be delivered by check within (5) calendar days of the Arbitrator approving this Settlement Agreement, but no later than December 30, 2020.

## ARGUMENT

## I. THE ARBITRATOR SHOULD APPROVE THE SETTLEMENT OF THE FLSA COLLECTIVE CLASS CLAIMS.

Courts (and necessarily Arbitrators) review settlements under the FLSA to ensure that they are fair and reasonable. *See Steele v. Staffmark Investments, LLC*, 172 F. Supp. 3d 1024, 1028 (W.D. Tenn. 2016); *Nutting v. Unilever Mfg. (U.S.) Inc.*, No. 2:14-CV-02239-JPM, 2014 WL 2959481, at *3 (W.D. Tenn. June 13, 2014); *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 (11th Cir. 1982); *Rampersad v. Certified Installation LLC*, No. 1:12-cv-00032, 2012 WL 5906878, at *1 (E.D. Tenn. Nov. 26, 2012). The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement. *Massiah v. Metroplus Health Plan, Inc.*, No. 11-cv-5669, 2012 WL 5874655, at *5 (E.D.N.Y. Nov. 20, 2012); *Trauth v. Spearmint Rhino Cos. Worldwide*,

---

[4] For all Class Members who have not responded to Class Counsel, the entirety of their Settlement Award, in the event it is claimed, shall be treated as non-wage penalties and liquidated damages, and shall be reported on an IRS Form 1099, and shall not be subject to federal or state withholdings.

5

No. 09-cv-1316, 2012 WL 4755682, at *5 (C.D. Cal. Oct. 5, 2012); *cf. O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009) (standards for certification of an FLSA collective action are less stringent than under Rule 23). This is because, unlike in a Rule 23 class action, there are no absent class members in a 216(b) collective action. Rather, in a 216(b) collective action like this one, each Opt-In Claimant has affirmatively consented to join the case as a party and agreed to be bound by any judgment or settlement reached by Claimant and her counsel.

An FLSA settlement need only reflect a reasonable compromise of contested litigation involving a bona fide dispute between the parties. *Crawford v. Lexington-Fayette Urban Cty. Gov't*, No. Civ. A. 06-299-JBC, 2008 WL 4724499, at *2 (E.D. Ky. Oct. 23, 2008) (citations omitted); *Bartlow v. Grand Crowne Resorts of Pigeon Forge*, No. 3:11-cv-400, 2012 WL 6707008, at *1 (E.D. Tenn. Dec. 26, 2012); *Rampersad*, 2012 WL 5906878, at *1; *Kritzer v. Safelite Solutions, LLC*, No. 2:10-cv-0729, 2012 WL 1945144, at *5 (S.D. Ohio May 30, 2012).

### A. The Settlement Agreement Is Fair And Reasonable.

The Settlement Agreement represents a fair and reasonable compromise of Claimant's and Class Members' claims. The parties have several bona fide disputes over the issues in this litigation, including, but not limited to: (i) whether the certification and arbitration of this case as a collective action is appropriate; (ii) whether Technicians and Installers were properly paid minimum wage; (iii) whether Respondents properly classified their Technicians and Installers as exempt such that they were not entitled to overtime compensation; and (iv) the amount of damages, if any, Claimants are owed. With these issues in mind, the parties engaged in discovery and extensive motion practice, thereby enabling both sides to assess the strengths and weaknesses of their respective cases. Given the considerable risk, cost, and uncertainty of continued litigation,

the parties negotiated the terms of the Settlement Agreement and respectfully submit it is fair, reasonable, and should be approved.

### B. The Proposed Allocation Represents A Fair And Reasonable Compromise Of Class Members' Claims.

Class Counsel performed an individualized inquiry of all Class Members to calculate each Class Member's damages. Because Respondents failed to keep records of the number of hours each Claimant worked, Class Counsel was forced to rely almost exclusively on the recollections of the Class Members to determine, on average, how many hours they worked for Respondents during the weeks they worked during the Recovery Period. For individuals who did not respond to Class Counsel, either before or after the parties agreed to settlement terms, Class Counsel assumed each such individual worked fifty-nine and a half (59.5) hours a week for each week he worked during the Recovery Period. This assumption was based on information provided by Claimant and other Class Members who communicated with Class Counsel throughout this litigation, as well as, payroll records produced by Respondents.

The central dispute in this case is whether Claimant and other Class Members were subject to the retail and service exemption such that Respondents were not required to pay overtime. Claimant takes the position that Claimant and all Class Members employed by Respondents during the relevant period were improperly classified, while Respondents contend that their pay practices were proper.

Recognizing the uncertainties and risks inherent in litigation, Claimant and Respondents ultimately reached a compromise that pays Claimant and the other Class Members $368,455 (excluding service award). The Settlement Agreement ensures that all Class Members recover back wages, even though some worked outside the FLSA's standard two-year statute of limitations. If Respondents were to prove at trial that their FLSA violations were not willful,

several Class Members could be excluded from recovering anything.

**C. The Proposed Allocation Reflects Counsel's Assessment Of The Strengths Of Claimant's And Class Members' Claims.**

The allocation of the settlement funds is based on Class Counsel's assessment that Claimant and Class Members may ultimately not prevail at trial, or in the event they did recover, would get substantially less than is currently being offered. The proposed allocation ensures that all Class Members receive approximately 63.29% of their back wages, overtime, ***and liquidated damages***, going back three years. This allocation ensures that all Class Members recover, even if their claims fell slightly outside of a time-period covered by the two-year statute of limitations.

As stated above, Class Counsel calculated the recovery for each Class Member based on the collective average number of hours Class Members remembered working for Respondents each week they worked during the Recovery Period. For Class Members who did not respond to Class Counsel's myriad attempts to contact them to determine how much time they worked for Respondents, Class Counsel used an average number of hours worked based on the observations of Claimant and other Class Members. After coming up with an aggregate recovery amount, Class Counsel then allocated the Settlement Funds to Class Members, dividing such funds between recoverable wages and recoverable liquidated damages, and then reduced the total recovery amount by 36.71%. Class Counsel submits that this is an appropriate allocation of these settlement funds, as it reflects their assessment of the strength of Claimant and Class Members' claims, as well as the realities of continuing litigation through at least the summer of 2021.

**D. The Service Award For Poole Is Reasonable.**

Poole will receive additional consideration as a service payment for his substantial efforts on behalf of the other Class Members and his assistance to Class Counsel. Poole has been diligently prosecuting this matter since 2018, and provided substantial assistance to Class Counsel

8

throughout the litigation. Under such circumstances, similar service payments in line with what is provided here have been approved in jurisdictions across the country. *See Johnson v. Midwest Logistics Sys., Ltd.*, No. 2:11-cv-1061, 2013 WL 2295880, at \*5 (S.D. Ohio May 24, 2013) (approving service payment of $12,500 to the named plaintiff in FCRA case where class members received either $260 or 1,000 each, finding "that the incentive award does not undermine the fairness of the settlement"); *Dallas v. Alcatel-Lucent USA, Inc.*, No. 09-14596, 2013 WL 2197624, at \*11 (E.D. Mich. May 20, 2013) (incentive payments justified where plaintiffs "responded to discovery requests, including document productions; participated in many conferences with Plaintiffs' counsel; and took the risk of joining this litigation at an early stage"); *Brent v. Midland Funding, LLC*, 2011 WL 3862363, at \*15 (N.D. Ohio Sept. 1, 2011) (finding incentive payments justified). Poole's substantial efforts and the outcome achieved as a result of his efforts, justify his service payment.

### E.  Class Counsel's Attorney's Fees And Expenses Are Fair And Reasonable.

The settlement of Claimant's attorney's fees and expenses for $261,545 represents a payment based on the lodestar accrued in this litigation and is a substantial discount on the actual amount of time Claimant's counsel spent prosecuting this matter. Over the course of the litigation, Class Counsel served discovery, reviewed over 9,000 pages of documents, prevailed on a motion for conditional certification, and extensively briefed numerous discovery issues. As of the date of this filing, counsel for Poole has incurred over $362,000 in attorney's fees and over $19,631 in expenses. The proposed allocation will result in Class Counsel writing off 33.24% of their fees and expenses during this litigation based on hourly rates that have been approved in the Middle District of Tennessee and other jurisdictions in FLSA collective action cases.

The FLSA's fee-shifting language provides that a prevailing plaintiff/claimant shall recover reasonable attorney's fees and litigation costs. *See* 29 U.S.C. § 216(b). "Indeed, an 'award of attorneys' fees under the FLSA is mandatory . . . .'" *Thompson v. United Stone, LLC,* No. 1:14-cv-224, 2015 WL 867988, at *2 (E.D. Tenn. Mar. 2, 2015) (citations omitted). "[T]he purpose of the FLSA attorney fees provision is 'to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances.'" *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cor. 1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.*, 732 F.2d 495, 501 (6th Cir.1984)).

The starting point in calculating a "reasonable" attorney fee is typically the determination of the fee applicant's "lodestar," which is the proven number of hours reasonably expended on the case by an attorney, multiplied by his court-ascertained reasonable hourly rate. *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). Here, Claimant's counsel's actual fees through the execution of the Settlement Agreement, based on the number of hours expended multiplied by the attorneys' regularly hourly billing rates is over $362,000. Claimant's counsel has also incurred expenses totaling more than $19,631 as of the date of this filing. The proposed payment of $261,545 for attorney's fees and expenses is 66.76% of those incurred and does "not produce [a] windfall[]." *Blum v. Stenson*, 465 U.S. 886, 897 (1984) (citations omitted). Moreover, through the administration of the settlement, Class Counsel will incur additional fees and expenses.

Class Counsel's fees are based on reasonable hourly rates. Whether an hourly rate is reasonable should be considered in the context of "the prevailing market rates in the relevant community." *Blum*, 465 U.S. at 895; *see also Monroe v. FTS USA, LLC*, No. 2:08-cv-2100, 2014

10

WL 4472720 at *9 (W.D. Tenn. July 28, 2014) (noting, in the FLSA context, that an attorney's reasonable hourly rate should begin with an assessment of the "prevailing market rate"). The hourly rates upon which Class Counsel's lodestar is based are reasonable.[5]

As the Supreme Court has held, "there is a 'strong presumption' that the lodestar figure is reasonable[.]" *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010); *see also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986), supplemented, 483 U.S. 711 (1987) ("A strong presumption that the lodestar figure—the product of reasonable hours times a reasonable rate—represents a 'reasonable' fee is wholly consistent with the rationale behind the usual fee-shifting statute . . . ."); *McCutcheon*, 2013 WL 4521016, at *1 (citation omitted) ("[T]here is a 'strong presumption' that the lodestar 'represents a reasonable fee.'"); *Mathis v. Wayne Cty. Bd. of Educ.*, No. 1:09-cv-0034, 2011 WL 3320966, at *8 (M.D. Tenn. Aug. 2, 2011) (Trauger, J.), aff'd, 496 F. App'x 513 (6th Cir. 2012) ("If the requested fee is essentially in line with the 'lodestar,' then there is a strong presumption that the requested fee is reasonable and recoverable.") (footnote omitted).

Given the reasonableness of Class Counsel's hourly rates and hours expended, the strong presumption that the lodestar represents a reasonable fee confirms the reasonableness of the fee request. Therefore, Class Counsel respectfully submits the requested fee and expense award is fair and reasonable and should be approved.

### F. Legal Aid Society Of Middle Tennessee & The Cumberlands Is An Appropriate *Cy Pres* Recipient To Receive Any Unclaimed Funds.

"*Cy pres* distributions are proper in connection with a class settlement, subject to court approval of the particular application of the funds." *In re Janney Montgomery Scott LLC Financial*

---

[5] Lead counsel Peter Klett's effective hourly rate over the course of this litigation is $348; Autumn Gentry's effective hourly rate over the course of this litigation is $264; Pam Pardee's, (the primary paralegal overseeing this litigation), effective hourly rate over the course of this litigation is $146.

*Consultant Litigation*, Case No. 06-3202, 2009 WL 2137224, *11 (E.D. Pa. July 16, 2009) (citing 4 NEWBERG § 11.20). "Federal courts have broad discretionary powers in shaping equitable decrees for distributing unclaimed class action funds." *Van Gemert v. Boeing Co.*, 739 F.2d 730, 737 (2d Cir. 1984); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990), *cited approvingly by Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 827 (6th Cir. 2006). The choice among distribution options should be guided by the objectives of the underlying statute and the interests of the silent class members. *See Six Mexican Workers*, 904 F.2d at 1307. Indeed, appellate courts review a district court's conclusion that a settlement agreeing to a *cy pres* distribution is reasonable for abuse of discretion. *See In re Airline Ticket Comm'n Antitrust Litig.*, 307 F.3d 679, 682 (8th Cir. 2002); *Wilson v. Sw. Airlines*, 880 F.2d 807, 811 (5th Cir. 1989).

"Courts have generally looked favorably on distributions to charities that offer services that are related to the plaintiffs of a class action." *Lessard v. City of Allen Park*, 470 F. Supp. 2d 781, 783 (E.D. Mich. 2007) (citing *Rodriguez v. Berrybrook Farms, Inc.*, Case No. K86-161 CA8, 1990 WL 10520985, *3 (W.D. Mich. Oct. 29, 1990), citing *Six Mexican Workers*, 904 F.2d at 1309). Organizations "that provide legal services to low-income individuals" are common types of beneficiaries of *cy pres* awards. *Lessard*, 470 F. Supp. 2d at 783. In fact, *cy pres* distributions have been utilized in collective action settlements under the FLSA. *See e.g., Mitcham v. Intrepid U.S.A., Inc., et al*. 3:17-cv-703 (W.D. Ky. May 28, 2019) (Boom, J.); *Carter v. Anderson Merchandisers, LP*, Case No. EDCV 08-00025-VAP and EDCV 09-0216-VAP, 2010 WL 144067, *5 (C.D. Cal. Jan. 7, 010) (Legal Aid of Northwest Texas a *cy pres* beneficiary); *Parker v. Time Warner Entertainment Co., L.P.*, 31 F. Supp. 2d 242, 250 (E.D.N.Y. 2009) (*cy pres* distribution to Samuelson Law and the Technology & Public Policy Clinic at Boalt Hall Law School); *Gilliam v. Addicts Rehabilitation Center Fund*, Case No. 05 Civ 3452(RLE), 2008 WL 782596, *3 (S.D.N.Y.

Mar. 24, 2008) (remaining *cy pres* award to be paid to The Legal Aid Society); *Diamond Chem. Co., Inc. v. Akzo Nobel Chems. B.V.*, Case No. 01-2118, 02-1018, 2007 WL 2007447, at *5 (D.D.C. July 10, 2007) (*cy pres* distribution to go to a newly created endowment fund at The George Washington University Law School); *Superior Beverage Co.*, 827 F. Supp. at 478-79 (*cy pres* distributions given to legal aid bureau and various law school programs, among other beneficiaries).

As a part of the proposed settlement agreement, the Parties agreed that Claimant may seek approval of a *cy pres* recipient to receive any funds that are not claimed by Class Members. Class Counsel estimates the *cy pres* distribution would be less than 10% and limited to a handful of Class Members who have yet to respond to communications related to mediation efforts and/or this settlement. Class Counsel will continue to try and connect with these Class Members and make every effort to distribute the funds to them before the one hundred and eighty (180) day deadline in the Settlement Agreement.

Courts in the Sixth Circuit have noted that designating a *cy pres* recipient "is often preferred over escheat to the government." *See, e.g., Rosser v. A & S Contracting, Inc.*, No. 2:15-CV-00711, 2017 WL 666121, at *2 (S.D. Ohio Feb. 17, 2017) (citation omitted) (approving *cy pres* in FLSA case); *In re Polyurethane Foam Antitrust Litig.*, 178 F. Supp. 3d 621, 623 (N.D. Ohio 2016) (citation omitted) (noting that courts typically prefer distributing funds to a *cy pres* recipient "[r]ather than see money escheat to the state or revert to the defendant"). Thus, Claimant's proposed and the Parties agreed that any remaining funds after the one hundred and eighty (180) day time period have expired shall be paid to Legal Aid Society of Middle Tennessee & The Cumberland ("Legal Aid") as a *cy pres* recipient. Legal Aid was selected because it is a nonprofit organization focused on, among other things, helping citizens collect wages owed to them. The

13

mission of Legal Aid closely aligns with the goals of the FLSA and the Class Members in this action, and is an appropriate *cy pres* recipient because "its interests reasonably approximate those being pursued by the class*." E.g., Rosser*, 2017 WL 666121, at *2 ("In making a *cy pres* distribution, courts look 'favorably on distributions to charities that offer services that are related to the plaintiffs of a class action.'"); *see also In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 3d 985, 1004 (N.D. Ohio 2016) (ordering lead counsel to identify *cy pres* "beneficiaries that have objectives related as closely as possible to the purposes and remedies sought by the class action").

<div align="center">**CONCLUSION**</div>

The Settlement Agreement, which was achieved after protracted litigation, and extensive negotiations, represents a reasonable resolution of this litigation. Accordingly, Claimant respectfully requests that the Arbitrator grant his Unopposed Motion for Settlement Approval of FLSA §216(b) Collective Action Claims.

<div style="margin-left:40%">

Respectfully submitted,

/s/ Autumn Gentry
Autumn L. Gentry, TN Bar #20766
Peter F. Klett, TN Bar #12688
DICKINSON WRIGHT PLLC
Fifth Third Center
424 Church Street, Suite 800
Nashville, TN 37219-2392
Tel.: 615.244.6538
agentry@dickinsonwright.com
pklett@dickinsonwright.com

and

</div>

<div align="center">14</div>

Trevor Howell, TN Bar #9496
HOWELL LAW, PLLC
P. O Box 158511
Nashville, TN 37215
Tel.: 615.406.1416
Trevor@howelllawfirmllc.com

*Counsel for Claimant and Opt-in Claimants*

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document by email on December 18, 2020:

Daniel W. Olivas
Brad W. Craig
Lewis, Thomason, King, Krieg &
Waldrop, P.C.
424 Church Street, Suite 2500
P.O. Box 198615
Nashville, TN 37219-8615

*Counsel for Respondents Greenway*
*Home Services of Nashville, LLC,*
*Whit Greenway, and Devin Williams*

Cameron M. Watson
Kevin D. Bernstein
Spicer Rudstrom, PLLC
Pembroke Square
119 South Main, Suite 700
Memphis TN 38103

*Counsel for Respondents Greenway*
*Home Services, LLC*

/s/ Autumn Gentry
Autumn L. Gentry

4832-3480-4436 v1 [81518-1]

# EXHIBIT 1

## AMERICAN ARBITRATION ASSOCIATION

CARL POOLE, individually, and on                )
behalf of all similarly-situated persons,        )
                                                 )
      Claimant,    )
                                                 )
v.                                               )    Case No. 01-19-0000-4151
                                                 )
GREENWAY HOME SERVICES, LLC,                     )    Arbitrator Michael L. Russell
GREENWAY HOME SERVICES OF                        )
NASHVILLE, LLC, and WHIT                         )
GREENWAY and DEVIN WILLIAMS,                     )
individually,                                    )
                                                 )
      Respondents. )

## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

1.      This Confidential Settlement Agreement and Release (the "Settlement Agreement") is entered into between Claimant Carl Poole ("Claimant") on the one hand, and Greenway Home Services, LLC, Greenway Home Services of Nashville, LLC, Whit Greenway and Devin Williams on the other hand (collectively "Respondents") (hereinafter, all together as the "Parties"), subject to the approval of the Arbitrator (as defined herein).

## RECITALS

2.      Claimant, individually and on behalf of the Settlement Class (as defined herein), asserts in the Action (as defined herein) that Respondents failed to pay minimum wage and overtime under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA").

3.      As a result of the Parties' arm's-length negotiations, including participating in private mediation with Bob Boston, a partner at the Waller firm in Nashville, Tennessee, the Parties have agreed to settle this Action according to the terms of this Settlement Agreement.

4.      Class Counsel (as defined herein) has made a thorough and independent investigation of the facts and law relating to the allegations in the Action.  In entering into this Settlement Agreement, Class Counsel has considered: (a) the facts developed in litigation and during the Parties' ADR process and the law applicable thereto; (b) the attendant risks of continued litigation and the uncertainty of the outcome of the claims alleged against Respondents; and (c) the desirability of consummating this settlement according to the terms of this Settlement Agreement.  Claimant and Class Counsel have concluded that the terms of this Settlement Agreement are fair, reasonable and adequate, and that it is in the best interests of himself and the Settlement Class to settle their claims against Respondents pursuant to the terms set forth herein.

5.     Respondents deny the allegations in the Action and deny that they engaged in any wrongdoing or violation of the law.  Respondents are entering into this Settlement Agreement because it will eliminate the burden, risk and expense of further litigation.  Neither this Settlement Agreement nor any document referred to herein, nor any action taken to carry out this Settlement Agreement, may be used in any way as an admission, concession or indication by or against Respondents of any fault, wrongdoing or liability whatsoever.

6.     The Parties recognize that Arbitrator approval of this Settlement Agreement is required to effectuate the Settlement Agreement, and that the Settlement Agreement will not become operative until the Arbitrator grants approval of it and the Settlement Agreement becomes effective.  However, upon approval of this Settlement Agreement, the effective date of this agreement shall be no later than December 30, 2020.

7.     In consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by each party to the other, IT IS HEREBY AGREED, by and between the undersigned, subject to the approval of the Arbitrator and the other conditions set forth herein, that Claimant and the Class Members' (as defined herein) lawsuit and/or arbitration clams against Respondents shall be settled, compromised and dismissed, on the merits and with prejudice, and that the Released Claims (as defined herein) shall be finally and fully compromised, settled and dismissed as to the Releasees (as defined herein), in the manner and upon the terms and conditions set forth herein.

## DEFINITIONS

8.     The following terms used in this Settlement Agreement shall have the meanings ascribed to them below:

a.     "Action" means the matter of Carl Poole, individually and on behalf of all others similarly situated v. Greenway Home Services, LLC, Greenway Home Services of Nashville, LLC, Whit Greenway and Devin Williams, an action that is currently stayed in United States District Court for the Middle District of Tennessee, Case No. 3:18-cv-00967, and this arbitration case involving the same parties filed in the American Arbitration Association.

b.     "Approval Order" means the Arbitrator's approval order approving the terms and conditions of this Settlement Agreement.

c.     "Arbitrator" means Michael Russell.

d.     "Class Counsel" means Dickinson Wright, PLLC, and Trevor Howell of Howell Law, PLLC.

e.     "Class Period" means the three-years prior to December 13, 2019, which is the date of Claimant's Motion for Conditional Certification, through June 30, 2020.

f.     "Class Member," "Settlement Class" or "Settlement Class Member" means those who have opted in to the Action.

2

g.  "Court" shall refer to the U.S. District Court for the Middle District of Tennessee Presiding over the Action.

h.  "Respondents' Counsel" means Daniel W. Olivas and Brad W. Craig with Lewis, Thomason, King, Krieg & Waldrop, P.C. (counsel for Respondents Greenway Home Services of Nashville, LLC, Whit Greenway, and Devin Williams), and Cameron M. Watson and Kevin D. Bernstein with Spicer Rudstrom, PLLC (counsel for Respondent Greenway Home Services, LLC).

i.  "Effective Date" means the first business day following the Arbitrator's Approval Order.

j.  "Release Period" means the time that a Class Member worked for Releasees during the Class Period through the date of the Approval Order.

k.  "Released Claims" means any and all state, local or federal claims, obligations, demands, actions, rights, causes of action and liabilities, whether known or unknown, against Releasees (as defined herein) for alleged unpaid wages, liquidated or other damages, unpaid costs, penalties (including late payment penalties), premium pay, interest, attorney's fees, litigation costs, restitution or any other compensation and relief arising under the FLSA and any other state or local wage-related law applicable to the work performed for Respondents during the Class Period.

l.  "Releasees" means Respondents, including its owners, officers, agents, employees, parent corporations, subsidiaries, affiliates and individual owners.

m.  "Settlement Award" means the payment that each respective Class Member shall be entitled to receive pursuant to the terms of this Settlement Agreement. The gross amount of each respective Settlement Award shall be divided equally between two checks, one for wages and one for non-wages.

n.  "Settlement Award Checks" means the checks for each Settlement Class Members' Settlement Award.

o.  "Gross Settlement Amount" means the amount that Respondents shall pay as provided for in this Settlement Agreement, in exchange for the release of all Released Claims by Claimant and the Class Members, which is the sum of $640,000.00, excluding the employers' share of federal and state payroll taxes. In no event shall the Gross Settlement Amount exceed this sum. This amount includes all court costs, expenses, and attorneys' fees of Claimant and the Class Members.

## **RELEASES**

9.  **Release**.  In consideration of the benefits to be received by Claimant and the Class Members under this Settlement Agreement, upon the Effective Date they agree as follows:

a.  Claimant shall be deemed to have released and forever discharged Releasees from any and all Released Claims.

3

b.　　Class Members shall be deemed to have released and discharged the Releasees from the Released Claims.

c.　　Notwithstanding any other provision of this Settlement Agreement, this release does not (i) waive or release any claim for breach or enforcement of this Settlement Agreement; (ii) waive or release any right or claim that may not be waived or released by applicable law; or (iii) prevent a Class Member from pursuing any administrative claim for unemployment compensation or workers' compensation benefits.　Nothing in this Settlement Agreement precludes a Class Member from (i) reporting to, responding to an inquiry from, filing a charge or complaint with, communicating with or providing information to, contacting, or cooperating with an investigation conducted by, the Equal Employment Opportunity Commission, the Department of Labor, the National Labor Relations Board, the Occupational Safety and Health Administration, the Securities and Exchange Commission, or any other federal, state, or local governmental agency, commission, or regulatory body (however, this release does waive the Claimant's right to recover any individual relief – including monetary damages, reinstatement or other legal or equitable relief – from the Releasees in any proceeding brought by a Class Member or on his/her behalf by any third party); (ii) providing information about this Settlement Agreement to his/her family members, attorney, or accountant or tax advisor (if any); (iii) making disclosures or giving truthful testimony as required by law or valid legal process (such as by a subpoena or administrative order); or (iv) engaging in any concerted or other legally-protected activities.

d.　　The Claimant and Class Members warrant and represent that they have not assigned, sold or otherwise transferred their claim, cause of action, or Settlement Award to any person or entity.

e.　　This Settlement Agreement is purposefully broad, and it is intended to capture any conceivable claim which the Claimant and Class Members may have against Respondents and the Releasees for unpaid wages or overtime compensation.

f.　　The Claimant and Class Members that this Settlement Agreement provides for the dismissal with prejudice of the Action, and the Claimant and Class Members understand that the dismissal with prejudice of the entire Action is a condition precedent to the payment of the Settlement Award and Gross Settlement Amount.

10.　　**Submitting to Arbitrator for Approval**.　The Parties agree that within two (2) calendar days of the execution of this Settlement Agreement, Claimant shall submit and file in Arbitration an unopposed Motion for Approval of Settlement Agreement, requesting that the Arbitrator approve the Settlement Agreement.　The unopposed Motion for Approval of Settlement Agreement shall include the allocation of the Gross Settlement Amount between each Class Member, Class Counsel's Attorney's Fees and Costs, and a service award to Claimant for his efforts in bringing and prosecuting this Action.　The Parties agree and acknowledge that this Agreement must be approved by the Arbitrator, and Class Members agree that this Settlement Agreement constitutes a fair and reasonable compromise of disputed claims under the FLSA. Claimant and Class Members agree that this settlement amount covers the full extent of Claimant's and Class Members' Allegations and potential for recovery under the FLSA.　Upon court approval

4

of this Settlement Agreement, Claimant and Class Members shall undertake all actions necessary to dismiss with prejudice any and all claims arising out of the allegations set forth in the Action in the Middle District of Tennessee.

11. **Funding Settlement Amount**. Within five (5) calendar days of the Arbitrator approving this Settlement Agreement, but no later than December 30, 2020, Respondents shall issue and deliver to Class Counsel each Class Member's Settlement Award Check(s), minus any employee side federal or state payroll withholding taxes for the W-2 portion of the settlement awards. Within five (5) calendar days after the Arbitrator approves this Settlement Agreement, Respondents shall wire to Class Counsel the lump sum owed to any Class Member who Class Counsel has been unable to locate before the Arbitrator approves this Settlement Agreement. Within five (5) calendar days of the Arbitrator approving this Settlement Agreement, but no later than December 30, 2020, Respondents shall also wire to Dickinson Wright, PLLC its Attorney's Fees and Costs, and shall issue and deliver a check made payable to Howell Law, PLLC, his Attorney's Fees and Costs, as approved by the Arbitrator. An IRS Form 1099 shall be provided to Class Counsel for the payments made to Class Counsel. Class Counsel shall be solely and legally responsible to pay any and all applicable taxes on those payments. In the event the Arbitrator does not rule on Plaintiff's Unopposed Motion For Settlement Approval, the parties agree that Respondent may petition the Arbitrator for additional time to fund the settlement.

12. **Settlement Awards to Class Members**. Settlement Awards shall be made to Class Members in the amounts set forth in the unopposed Motion for Approval of Settlement Agreement. Fifty percent (50%) of each Settlement Award to each Class Members shall be treated as back wages, and accordingly, Respondents shall withhold federal and applicable state income and employment taxes and withholdings as required by law with respect to 50% of each Settlement Award distributed. The remaining 50% of each Settlement Award shall be treated as non-wage penalties and liquidated damages, to be reported on an IRS Form 1099, and shall not be subject to federal or state withholdings. For all Class Members who Class Counsel has been unable to locate before the Arbitrator approves this Settlement Agreement, the entirety of their Settlement Award, in the event it is claimed, shall be treated as non-wage penalties and liquidated damages, and shall be reported on an IRS Form 1099, and shall not be subject to federal or state withholdings. Each Class Member shall be solely and legally responsible to pay all taxes on the non-wage penalties and liquidated damages portion of the Settlement Award.

13. **Service Award to Claimant**. In addition to his Settlement Award, the Claimant shall be entitled to a service award in the amount of $10,000.00. Within five (5) calendar days of the Arbitrator approving this Settlement Agreement, but no later than December 30, 2020, Respondents shall issue and deliver to Class Counsel a check made payable to Claimant in the amount of $10,000.00, which shall be reported on an IRS Form 1099, and shall not be subject to federal or state withholdings.

14. **Distributing Settlement Awards to Class Members**. Class Counsel shall distribute all Settlement Awards to Class Members within five (5) business days of receiving the Settlement Award Checks. Any Settlement Award Checks returned to Class Counsel with a forwarding address shall be re-mailed within five (5) business days following receipt of the returned mail. If any Settlement Award Check is returned without a forwarding address, Class

5

Counsel shall undertake reasonable efforts such as skip traces to search for the correct address within five (5) business days, and shall re-mail the Settlement Award Check to any newly found addresses within five (5) business days of finding the new address(es). Within ten (10) calendar days of receiving the lump sum owed to any Class Member who Class Counsel is unable to locate before the Arbitrator approves this Settlement Agreement, Class Counsel shall undertake reasonable efforts to locate such Class Member so he/she can claim his/her share of the Settlement Award. Any funds unclaimed within one-hundred and eighty (180) days after being received by Class Counsel will be distributed as a *cy pres* selected by Class Counsel and approved by the Arbitrator.

15. **No Claim Based Upon Distributions or Payments in Accordance with this Settlement Agreement**. No person shall have any claim against the Releasees, Respondent, the Settlement Class Members, Class Counsel, or Respondents' Counsel based on distributions or payments made in accordance with this Settlement Agreement.

16. **Attorney Fees to Class Counsel.** Attorney fees, costs and expenses shall be paid consistent with this Settlement Agreement and the Arbitrator's and Court's Order, but in no event shall such attorney fees, costs and expenses cause an increase in the Gross Settlement Amount. The Claimant and Class Members agree, irrespective of fees and costs actually incurred in this Action, that they shall not individually or severally seek an additional award of attorneys' fees (statutory or otherwise), costs and expenses beyond the Gross Settlement Amount contained herein.

## MISCELLANEOUS

17. **Agreement to Arbitrate**. The Parties agree to submit their Settlement Agreement to Arbitrator Michael Russell for approval.

18. **No Rehire**. Claimant understands and agrees that, as a condition of receiving the consideration described herein, he will not be entitled to any future employment with Respondents. Claimant further agrees that he will not apply for or otherwise seek future employment with or engagement by Respondents, including employee, independent contractor or vendor. Claimant agrees that, as part of the consideration for this Settlement Agreement, he will neither apply for nor seek future employment with Respondents.

19. **Non-Disparagement.** Claimant and Respondents agree not to disparage, demean, or defame one another in any manner whatsoever.

20. **Class Counsel's Affirmation**. Class Counsel does not knowingly represent any individual with claims against Respondents that have not been previously raised with Respondents.

21. **Respondents' Legal Fees**. Respondents' legal fees and expenses in the Action shall be borne by Respondents and/or its indemnitors.

22. **Nullification of the Settlement Agreement**. In the event: (a) the Arbitrator does not approve the Settlement Agreement as provided herein; or (b) the Settlement Agreement does

6

not become final for any other reason outside the control of the Parties; this Settlement Agreement shall be null and void and the Parties shall immediately resume negotiations and resubmit a revised Settlement Agreement to the Arbitrator for his approval; if the Parties are unable to reach agreement on a revised Settlement Agreement, they agree to Arbitrate the case on the merits before the Arbitrator.

23. **Inadmissibility of Settlement Agreement**. Except for purposes of settling the Action or enforcing this Settlement Agreement, neither this Settlement Agreement, nor its terms, nor any document, statement, proceeding or conduct related to this Settlement Agreement, nor any reports or accounts thereof, shall be construed as, offered or admitted in evidence as, received as, or deemed to be evidence for any purpose adverse to the Parties, including, without limitation, evidence of a presumption, concession, indication or admission by any of the Parties of any liability, fault, wrongdoing, omission, concession or damage.

24. **Computation of Time**. For purposes of this Settlement Agreement, if the prescribed time period in which to complete any required or permitted action expires on a Saturday, Sunday, or legal holiday (as defined by FED. R. CIV. P. 6(a)(6)), such time period shall be continued to the following business day.

25. **Tax Indemnification**. Claimant and Class Members agree to pay any taxes found to be owed by them as a result of payments made to and received by them pursuant to this Settlement Agreement and to hold the Releasees harmless from any claims, assessments, demands, penalties and interest as a result thereof. Respondents have made no representation regarding how the amount of consideration provided for in this Settlement Agreement should be treated for tax purposes. Claimant and Class Members acknowledges that he/she is responsible for obtaining appropriate advice and counseling regarding the tax consequences of Respondents' payments to him/her and that he/she is responsible for the payment of all taxes. Claimant and Class Members agree to indemnify and hold harmless Respondents for any tax liability, interest, or penalty that may in the future be assessed arising out of the payment of the Settlement Amount referenced herein, including costs and attorneys' fees incurred by Respondents and/or the Releasees resulting from payments to the Claimant and Class Members and their attorneys.

26. **Amendment or Modification**. This Settlement Agreement may be amended or modified only by a written instrument signed by counsel for all Parties or their successors in interest.

27. **Entire Settlement Agreement**. This Settlement Agreement constitutes the entire agreement among the Parties, and no oral or written representations, warranties or inducements have been made to any party concerning this Settlement Agreement other than the representations, warranties, and covenants contained and memorialized herein. All prior or contemporaneous negotiations, memoranda, agreements, understandings, and representations, whether written or oral, are expressly superseded hereby and are of no further force and effect. Each of the Parties acknowledges that they have not relied on any promise, representation or warranty, express or implied, not contained in this Settlement Agreement.

2. **Authorization to Enter Into Settlement Agreement**. Counsel for all Parties are

7

expressly authorized by the Parties whom they represent to enter into this Settlement Agreement and to take all appropriate action required or permitted to be taken by such Parties pursuant to this Settlement Agreement to effectuate its terms, and to execute any other documents required to effectuate the terms of this Settlement Agreement. The Parties and their counsel shall cooperate with each other and use their best efforts to effect the implementation of this Settlement Agreement.

29. **<u>Binding on Successors and Assigns</u>**. This Settlement Agreement shall be binding upon, and inure to the benefit of Claimant, Respondents, and the Class Members and their heirs, beneficiaries, executors, administrators, successors, transferees, successors, assigns, or any corporation or any entity with which any party may merge, consolidate or reorganize.

30. **<u>Counterparts</u>**. This Settlement Agreement may be executed in one or more counterparts, including by facsimile or email. All executed counterparts and each of them shall be deemed to be one and the same instrument.

31. **<u>Cooperation and Drafting</u>**. The Parties have cooperated in the drafting and preparation of this Settlement Agreement; hence the drafting of this Settlement Agreement shall not be construed against any of the Parties. The Parties agree that the terms and conditions of this Settlement Agreement were negotiated at arm's length and in good faith by the Parties and reflect a settlement that was reached voluntarily based upon adequate information and sufficient discovery and after consultation with experienced legal counsel.

32. **<u>Jurisdiction of the Arbitrator</u>**. The Arbitrator shall retain jurisdiction with respect to the interpretation, implementation, and enforcement of the terms of this Settlement Agreement and all orders and judgments entered in connection therewith, and the Parties and their counsel submit to the jurisdiction of the Arbitrator for this purpose.

33. **<u>Attorney's fees and costs</u>**. In the event of a breach of this Settlement Agreement, the non-breaching Party or Parties shall be entitled, in addition to any other remedies and damages available, to recover their attorneys' fees and costs incurred in any legal action to enforce the terms of this Settlement Agreement or arising as a result of the breach thereof.

34. **<u>Severability</u>**. Should any provision of this Settlement Agreement be held to be illegal, void or unenforceable, such provision shall be of no force and effect, however, the illegality or unenforceability of any such provision shall have no effect upon, and shall not impair the enforceability of, any other provision of this Settlement Agreement.

35. **<u>Choice of Law</u>**. This Agreement shall be construed under Tennessee law.

IN WITNESS WHEREOF, the Parties and their counsel have executed this Settlement Agreement as follows:

NAMED
RESPONDENT:          _____          Date: _____, 202_
                     Carl Poole


FOR
CLASS
COUNSEL:             _____          Date: _____, 202_
                     Peter Klett, TN Bar #12688
                     Autumn Gentry, TN Bar #20766
                     Trevor Howell, TN Bar #9496

FOR
RESPONDENTS'
COUNSEL:             _____         Date: _____, 202_
                     Daniel W. Olivas
                     Brad W. Craig
                     Cameron M. Watson
                     Kevin D. Bernstein


FOR
RESPONDENTS:         _____         Date: _____, 202_
                     For: Greenway Home Services, LLC


                     _____         Date: _____, 202_
                     For: Greenway Home Services of
                     Nashville, LLC


                     _____         Date: _____, 202_
                     Whit Greenway


                     _____         Date: _____, 202_
                     Devin Williams


4824-2536-8788 v1 [81518-1]

9

# EXHIBIT 2

| LName | FName | Taxable | $ | 1,099.00 |
|---|---|---|---|---|
| Allen | Dustin | $856.92 | $ | 856.92 |
| Bullard | Daniel | $544.03 | $ | 544.03 |
| Bush | Allen | $11,213.39 | $ | 11,213.39 |
| Bush | Cardell | $6,131.34 | $ | 6,131.34 |
| Caston | Alexei | $1,252.99 | $ | 1,252.99 |
| Clayton | Rueben | $15,621.94 | $ | 15,621.94 |
| Coleman | Courtavius | $7,939.50 | $ | 7,939.50 |
| Cushman | Jeremy | $10,918.87 | $ | 10,918.87 |
| Daniels | Maisean | $2,872.21 | $ | 2,872.21 |
| Delph | Joshua | $555.79 | $ | 555.79 |
| Dwyer | Bryan | $2,152.67 | $ | 2,152.67 |
| Ferguson | Kyle | $1,255.15 | $ | 1,255.15 |
| Fitts | Jecorey | $2,687.21 | $ | 2,687.21 |
| Flanagan | Benjamin | $8,027.14 | $ | 8,027.14 |
| Freeman | David | $13,478.18 | $ | 13,478.18 |
| Garrett | Briar | $1,209.85 | $ | 1,209.85 |
| Gentry | Walter | $796.40 | $ | 796.40 |
| Giacosa | Charles | $1,445.75 | $ | 1,445.75 |
| Goodman | Nikolas | $579.09 | $ | 579.09 |
| Goodsell | Gilbert | $339.01 | $ | 339.01 |
| Hall | Matthew | $498.60 | $ | 498.60 |
| Hammer | Bobby | $6,348.74 | $ | 6,348.74 |
| Hill | Spencer | $1,008.09 | $ | 1,008.09 |
| James III | Ronald | $6,980.06 | $ | 6,980.06 |
| Johnson | Michael | $18,940.53 | $ | 18,940.53 |
| Kovalsky | Christopher | $82.29 | $ | 82.29 |
| Kremenetsky | Dmetry | $16,559.26 | $ | 16,559.26 |
| Manning | Terry | $345.12 | $ | 345.12 |
| Maurice | Manwell | $157.96 | $ | 157.96 |
| McClendon | Justin | $2,989.79 | $ | 2,989.79 |
| McMickens, Jr. | Henry | $3,223.92 | $ | 3,223.92 |
| Montgomery | Orlanskee | $578.13 | $ | 578.13 |
| Morris | Michael | $5,033.18 | $ | 5,033.18 |
| Neal | Brian | $1,113.00 | $ | 1,113.00 |
| Overton | William | $582.56 | $ | 582.56 |
| Pilcher | David | $2,068.70 | $ | 2,068.70 |
| Poole | Carl | $3,629.86 | $ | 3,629.86 |
| Rice | Patrick | $4,585.53 | $ | 4,585.53 |
| Robinson | Gerald | $157.96 | $ | 157.96 |
| Sanders | James | $180.44 | $ | 180.44 |
| Snyder | William | $1,276.28 | $ | 1,276.28 |
| Spelzhaus | Colin | $344.26 | $ | 344.26 |

| LName | FName | Taxable | $ | 1,099.00 |
|---|---|---|---|---|
| Taylor | Marques | $6,116.59 | $ | 6,116.59 |
| Thacker | Larry | $1,473.63 | $ | 1,473.63 |
| Townes | Terrance | $6,588.57 | $ | 6,588.57 |
| Wallace | Davian | $1,178.68 | $ | 1,178.68 |
| Ward | Xavier | $2,308.34 | $ | 2,308.34 |
|  |  | $ 184,227.50 | $ | 184,227.50 |

| | | |
|---|---|---|
| Sub-Total | $ | **368,455.00** |
| Rep Plaintiff Fee | $ | 10,000.00 |
| GRAND TOTAL | $ | **378,455.00** |